UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| WIENER, WEISS & MADISON, A PROFESSIONAL LAW CORP., ET AL., Plaintiffs | CIVIL DOCKET NO. 5:16-CV-00850 |
| VERSUS | CHIEF DISTRICT JUDGE HICKS |
| LESLIE B. FOX, Defendant | MAGISTRATE JUDGE PEREZ-MONTES |

## REPORT AND RECOMMENDATION

Before the Court is a Motion to Strike Jury Demand filed by Plaintiffs Wiener Weiss & Madison A Professional Corp and Kantrow Spaht Weaver & Blitzer (collectively, Plaintiffs or the "Firms"). ECF No. 265. The Firm now has one remaining claim before this Court: a claim to recover compensation for legal services, results, and other expenses under a theory of *quantum meruit*. This claim, by nature and as asserted by the Firms, is an independent theory of recovery. It was and is now to be used only because the Firms' contingency fee contract has been declared void.

Under those circumstances, the Firms seek relief that is more akin to a "primary" claim for unjust relief, or "unjust enrichment" under Louisiana law. The relief sought at least could implicate more than attorney's fees alone. And the relief sought is now untethered to any other primary claim.

Fox has a right to a jury trial as to that claim and those potential forms of relief. The Motion to Strike ECF No. 265) should therefore be DENIED.

I. **Background.**

Plaintiffs Weiner, Weiss & Madison, A Professional Corporation, and Kantrow, Spaht, Weaver & Blitzer (A Professional Law Corporation), filed this action to recover attorney's fees allegedly owed by Defendant Leslie B. Fox ("Fox"). Plaintiffs assert diversity jurisdiction.

Plaintiffs represented Fox's property interests in two bankruptcy matters filed by her husband during their ongoing divorce proceedings. ECF No. 1 at 2-3. The bankruptcy matters involved all of their community assets, most of which were in Louisiana. ECF No. 1 at 3. Fox was ultimately unable to recover all of her legal fees and expenses through the bankruptcy proceedings. Fox and Plaintiffs had purportedly contracted for contingency fees in two successive agreements. ECF No. 1 at 3-6. Those fees were for payments in the form of cash and business assets.

In its decision to remand, the United States Court of Appeals for the Fifth Circuit set forth these and the remaining facts more fully as follows:

> In 2009, four years after Fox filed for divorce from her husband, Harold L. Rosbottom, Jr., the divorce court appointed a receiver to assume control of the couple's community estate, which consisted primarily of "state-licensed gaming enterprises" that operated in Louisiana (the Community Entities). "Less than one hour later," Rosbottom filed for Chapter 11 bankruptcy in the Western District of Louisiana, effectively transferring the contested property division from Texas family court to federal bankruptcy court. So Fox engaged the Firms.
>
> The Firms originally agreed to represent Fox "in connection with the [ ] bankruptcy cases and any and all matters related to those bankruptcy cases" at an hourly rate. But because her assets were tied up in the bankruptcy proceedings, the Firms agreed to seek their fees directly

2

from the court, payable from the community estate. On March 1, 2010, the Firms filed a "Substantial Contributions Application," seeking more than $1.2 million in fees. The bankruptcy court approved the application, and the Firms were paid their $1.2 million, plus interest.

Because the Firms believed it was "highly unlikely" that the court would approve another substantial contribution claim, but there was work left to be done, they proposed a contingency fee agreement. The agreement assigned the Firms up to a 35% interest[1] in the gross proceeds (whether cash or property) that Fox received for her claims against the bankruptcy estate and as an equity owner of the bankruptcy estate of her husband. Fox signed the agreement.

By 2013, the Community Entities, whose assets had been depleted by Rosbottom's mismanagement,[2] were enjoying a positive cashflow and had satisfied much of their debt. And on May 1, 2013, the bankruptcy court approved a proposed Plan of Reorganization for the Community Entities. The Plan granted Fox a 100% interest in ABC Holding, LLC—later renamed Louisiana Truck Stop and Gaming (LTSG)—a holding company comprised of the Community Entities. However, Fox could not receive her entire interest until all creditors were paid, Louisiana gaming authorities approved the transfer, and Fox obtained a final, unappealable divorce decree and community partition.

Following the Plan's approval, the Firms informed Fox that their work was complete and that, if Fox "wanted them to stay on," she had "to increase the contingency percentage." The Firms then provided her with a revised contingency agreement, which increased the Firms' contingency fee to 40% of the gross proceeds, including her proceeds as the full equity owner of LTSG, from the bankruptcy proceedings. Fox signed the agreement.

After the new agreement (the 2013 CFA) was signed, the Firms worked to expedite the Plan's consummation, including by searching for a lender to loan LTSG funds to pay the Community Entities' remaining creditors. Business First Bank ultimately provided two loans to LTSG, which Fox, exclusively, guaranteed.

In early 2016, before Fox received full ownership and control of LTSG from the bankruptcy court, the Firms asked her to execute a new agreement. Having determined that the 2013 CFA was "unwieldy for

3

LTSG as well as the [F]irms," and "convinced that it was not the best approach for [Fox] or the companies," the Firms sought to amend the 2013 CFA so that the "[F]irms receive 40% of any distributions of property or cash that [Fox] receive[s] rather than any outright ownership." Though they had not done so with the previous agreements, the Firms recommended that Fox seek independent legal advice about whether to execute this new, eleven-page contingency agreement. Fox did just that, and her independent counsel advised against executing the revised agreement—advice Fox took.

Presumably (though the parties don't say exactly) relations soured between Fox and the Firms after she declined to sign the revised agreement, and the Firms eventually filed suit against Fox for breach of contract and to enforce specific performance of the 2013 CFA. In the alternative, the Firms raised a quantum meruit claim. Fox answered, in relevant part, that the Firms' claims are "barred because their fee agreements violate the Louisiana Rules of Professional Conduct" and "are void due to vagueness and ambiguity."

¹ The percentage of the contingency fee varied depending on the overall value of Fox's recovery.

² In 2012, Rosbottom was convicted of bankruptcy fraud and money laundering and sentenced to ten years in federal prison. He was also ordered to pay restitution to Fox.

The Firms first sought to recover based upon letters of engagement and their 2013 contingency fee agreement (the "CFA") (ECF No. 1 at 11-20). They asserted claims for breach of contract, specific performance, and damages.¹ Alternatively,

---

¹ Plaintiffs contend they: (1) located substantial assets hidden by Fox's husband; (2) assisted the bankruptcy examiner in identifying fraud and misrepresentations by Fox's husband; (3) filed two adversarial proceedings against Fox's husband and another person who had acted as his nominee; (4) moved to have a Bankruptcy Trustee take over the estate and have Fox's husband removed as debtor in possession before he liquidated the estate; and (5) filed a third adversarial proceeding against Fox's husband for inequitable distribution of the equity of the bankruptcy estate. As a result of Plaintiffs' efforts, Fox was

and only if the 2013 CFA was voided, the Firms averred they should recover under a theory of *quantum meruit*.[2] ECF No. 10 at 11-12, 22, 24. In that scenario, the Firms sought a "*quantum meruit* award commensurate with their contingency fee interest" under the 2013 CFA." ECF No. 1, at 23.

Fox denied Plaintiffs' claim for additional compensation under any theory of recovery, and requested a jury trial. ECF No. 10 at 11-12, 22, 24. Plaintiffs later filed a Motion for Summary Judgment, which was granted (ECF No. 222). This Court ordered Fox to perform her obligations under the 2013 CFA and to pay all fees, costs, and expenses due to Plaintiffs. ECF No. 222.

The United States Court of Appeals for the Fifth Circuit vacated that judgment; awarded partial summary judgment in favor of Fox voiding both CFAs, and; remanded the case on one issue: "consideration of Plaintiffs' alternative *quantum meruit* claim." ECF No. 254. See *Weiner, Weiss & Madison v. Fox*, 971 F.3d 511 (5th Cir. 2020). On remand, Plaintiffs filed the pending Motion to Strike Jury Demand (ECF No. 265). Fox opposes (ECF No 267).

Briefing is complete. The matter is presently stayed, but this motion can be properly resolved at present.

---

awarded former assets of the bankruptcy estate valued at over $60 million. ECF No. 1 at 20.

[2] The expression "*quantum meruit*" means "as much as he deserves." See *Morphy, Makofsky & Masson, Inc. v. Canal Place 2000*, 538 So.2d 569, 574 (La. 1989) (*citing* Black's Law Dictionary (5th ed. 1979).

II. Law and Analysis

Fox's entitlement to a jury trial turns upon the nature of the Firms' remaining claim. As to this basic idea, there is no meaningful dispute.

Rather, the parties disagree about the nature of the claim and parallel issues thereto. Plaintiffs argue that the issue before this Court is not *whether* attorney's fees are owed, but rather, *the amount* of fees owed. Plaintiffs maintain that this determination in the form of a *quantum meruit* claim, or *action de rem verso,* is an equitable remedy as to which Fox has no right to a jury trial.

Fox counters that the Firms' claim is – or must be construed as – a "common law" claim for unjust enrichment – an independent theory of relief – or a claim for unjust enrichment under La. Civ. C. art. 2298. As to such a claim, Fox would be entitled to a jury trial.

A. The Motion must overcome any claimed right to a jury trial, and a presumption in favor of affording the jury trial right when invoked.

When a party demands a jury trial, a trial on all issues so demanded must be by jury unless "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." *United States v. E.R.R. LLC*, 417 F. Supp. 3d 789, 793 (E.D. La. 2019) (citing Fed. R. Civ. P. 39(a)(2)). When no such federal right to a jury trial exists, the Court may strike a jury demand. *See id.*

The right to a jury trial in a diversity case is determined by federal, not state, law. *See El Pollo Loco, S.A. de C.V. v. El Pollo Loco, Inc.*, 2007 WL 9747239, at *20 (S.D. Tex. 2007) (citing *Simler v. Conner*, 372 U.S. 221 (1963); *Byrd v. Blue Ridge*

*Rural Electric Cooperative*, 356 U.S. 525 (1958); *Goar v. Compania Peruana de Vapores*, 688 F.2d 417, 423 (5th Cir. 1982)). Rule 38 of the Federal Rules of Civil Procedure states: "The right of trial by jury as declared by the Seventh Amendment to the Constitution–or as provided by a federal statute–is preserved to the parties inviolate." Fed. R. Civ. P. 38(a).

Where an ordinary statute does not entitle a party to a jury trial, the right to trial by jury must therefore depend on the Seventh Amendment. *See El Pollo Loco, S.A. de C.V.*, 2007 WL 9747239, at *20 (citing *Goar*, 688 F.2d at 423). The right to a jury trial is a "fundamental" right requiring courts to "indulge every reasonable presumption against its waiver." *Quality Fireplaces, Ltd. v. Lennox Hearth Prod., LLC*, No. CV H-13-680, 2013 WL 12173753, at *1 (S.D. Tex. June 5, 2013) (quoting *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393, 57 S. Ct. 809 (1937)).

### B. The Firm's remaining claim is a "primary" quantum meruit, or an "unjust enrichment," claim.

The Firm construes its remaining claim as "ancillary," requiring only computation of a recovery for *quantum meruit* that has already been admitted or established. In several respects, the Firm's purported claim differs from other claims that are sometimes also called "*quantum meruit*" claims.

In 1989, the Louisiana Supreme Court explained this distinction in the following terms:

> Thus the Civil Code articles on Obligations have long furnished the principles for interpreting contracts ambiguous only with regard to

> compensation or price for agreed upon services. Unfortunately for the purity of our civilian concepts, the cases in our jurisprudence which have applied these codal provisions have often referred to this reasonable value of services or equitable ascertainment of compensation or price as "*quantum meruit*" or an action in *quantum meruit*. *Quantum meruit* may well have been an ill-considered importation from the common law (see that criticism in *Oil Purchasers v. Kuehling,* 334 So.2d 420 (La.1976)); however, no great harm follows from that importation if we understand that numerous cases in our jurisprudence have used "*quantum meruit*" as a descriptive term, descriptive of the equitable principles of contract interpretation ennunciated in La. Civ. Code arts. 1903 and 1965, which were the substantive law bases for the decisions in these cases. See *Porter v. Johnson,* 408 So.2d at 967, n. 4.
>
> A problem has arisen in our jurisprudence only when the courts have moved from *quantum meruit* as simply a measure of compensation or price unstated in a contract, to *quantum meruit*, the common law substantive law claim geared to equity and unjust enrichment, something of a counterpart to the civilian *actio de in rem verso.* . . .
>
> The practical consequence of distinguishing our contract cases without stipulated compensation or price (sometimes designated "*quantum meruit*" cases) from the civilian *actio de in rem verso,* and perhaps the common law action in assumpsit in *quantum meruit,* is that in the former the degree of plaintiff's impoverishment and the extent of defendant's enrichment are irrelevant. A person or firm employed by contract is entitled, from the employing party, to the reasonable value of services (where the contract is silent) irrespective of whether the employer's patrimony is commensurately enriched. (Footnotes omitted.)

*Morphy, Makofsky & Masson, Inc. v. Canal Place 2000,* 538 So.2d 569 (La. 1989);

*see also Baker v. M*aclay Properties Co., 94-1529 (La. 1/17/95), 648 So. 2d 888, 896-97.

In subsequent years, however, the theory of "contractual *quantum meruit*" has been used as a term in Louisiana to denote a claim for recovery under such a

8

partial or implied contract which lacked only price as a settled term. *See Gulfstream Services, Inc. v. Hot Energy Services, Inc.*, 2004-1223 (La. App. 1st Cir. 3/24/05), 907 So.2d 96, 100–01, *writ den.,* 2005-1064 (La. 6/17/05), 904 So.2d 706 (citing *Morphy, Makofsky & Masson, Inc.,* 538 So.2d at 574–75; *Howell v. Rhoades,* 547 So.2d 1087, 1089 (La. App. 1st Cir. 1989)). Such a claim for compensation has also been considered under traditional theories of contract interpretation where a missing but implied term of the contract must be judicially supplied.[3] *See Morphy, Makofsky & Masson, Inc.*, 538 So. 2d at 574 (*citing Porter v. Johnson,* 408 So.2d 961, 966 (La. App. 2d Cir. 1981)); *see also Marchand v. Mull*, 2008-0584 (La. App. 1st Cir. 10/14/08), 2008 WL 4567280, at *4; *United Disaster Response, L.L.C. v. Omni Pinnacle, L.L.C.,* 569 F. Supp. 2d 658, 665 (E.D. La. 2008); *Dumas and Associates, Inc. v. Lewis Enterprises, Inc.,* 29,900 (La. App. 2d Cir. 12/22/97), 704 So.2d 433, 438.

These issues and others have resulted in confusion and disagreement when "*quantum meruit*" is set forth in a petition or complaint. But in recent years, courts

---

[3] Where there is a contract without stipulated compensation or price, the degree of plaintiff's impoverishment and the extent of defendant's enrichment are irrelevant. A person or firm employed by contract is entitled, from the employing party, to the reasonable value of services (where the contract is silent) irrespective of whether the employer's patrimony is commensurately enriched. *See Morphy, Makofsky & Masson, Inc.*, 538 So. 2d at 575.

"There is no specific test which must be applied to determine the reasonable value for such services. It is a matter of equity depending upon the circumstances of each case." *See Morphy, Makofsky & Masson, Inc.*, 538 So. 2d at 575 (*citing Jones v. City of Lake Charles,* 295 So. 2d 914 (La.App. 3d Cir. 1974)).

9

have clarified some of that confusion, and drawn distinctions between the Firm's purported claim and others. Additionally, the Louisiana legislature adopted La. Civ. C. art. 2298, "Enrichment without cause; compensation," or commonly "unjust enrichment." These developments now critically inform the controlling distinction here.[4]

Fox seeks to impose that distinction. In Fox's view, the Firms' remaining claim is, or must now be construed as, primary claim seeking relief independently from any other claim. Fox thus argues instead that the Firms' remaining claim is, or is at least more akin to, a claim for "unjust enrichment."

The Louisiana Civil Code now codifies "unjust enrichment" as follows:

A person who has been enriched without cause at the expense of another person is bound to compensate that person. The term "without cause" is used in this context to exclude cases in which the enrichment results from a valid juridical act or the law.

The remedy declared here is subsidiary and shall not be available if the law provides another remedy for the impoverishment or declares a contrary rule.

La. Civ. C. art. 2298. "[T]to establish a claim for unjust enrichment, a plaintiff must prove the following five elements: (i) an enrichment; (ii) an impoverishment; (iii) a connection between the enrichment and impoverishment; (iv) lack of a

---

[4] The *Morphy* court also formally found that there was a valid oral contract, and was *not* dealing solely attorney's fees. *Id.* at 574-75.

justification or cause for the enrichment and impoverishment; and (v) no other available legal remedy. "

Federal courts have recently clarified that "the elements of unjust enrichment and [primary] quantum meruit are indistinguishable." *Nave v. Gulf States Servs. LLC*, No. CV 20-546, 2020 WL 4584294, at *1 (E.D. La. Aug. 10, 2020). Courts have also traced at least some of the confusion to pleadings seeking relief in the alternative:

> "Unjust enrichment is a specific cause of action that may not be asserted against a defendant as a mere catchall or safety net in the event that a plaintiff fails to succeed on the merits of his or her other claims."[14] . . . . "[W]hether plaintiff succeeds or not with respect to his other claims is immaterial." "It is not the success or failure of other causes of action, but rather the existence of other causes of action, that determine whether unjust enrichment can be applied." In other words, "the mere fact that there are alternative remedies available precludes a claim for unjust enrichment."[17] "While some district courts have permitted unjust enrichment claims to be pled in the alternative, apparently in reliance on federal procedural law, as Judge Feldman correctly noted in *JP Mack Industries*, those courts did so without analyzing the effect of such a ruling on Louisiana substantive law."

*Id.* (internal citations omitted).

With these findings in view, the dispute here comes into better focus. "Under Louisiana law, quantum meruit is not recognized as a cause for recovery, 'but is only used as a measure of compensation or price in quasi-contract or when none is stated in a contract." *Otteman v. Knights of Columbus*, No. CV 19-11291, 2021 WL 533719, at *4 (E.D. La. Feb. 12, 2021). The Firm did not invoke the term in this

11

allowable sense. Instead, the Firm requested alternative relief under the heading "*quantum meruit*." But the import of the Firms' request – the remaining claim before this Court – was and remains clear. The Firm sought recovery through an alternative theory – specifically, one to be invoked only if its other forms of relief were no longer available. The Firms even specified that the wanted a *quantum meruit* recovery only if the 2013 CFA was "deemed unenforceable." ECF No. 1, at 23.

The Court's remaining conclusions necessarily follow. The Firm's remaining claim is a primary claim for "*quantum meruit*," or a claim for "unjust enrichment" using the terms of the Louisiana Civil Code. The claim expressed that it was superfluous if other relief remained available. When the Fifth Circuit voided the 2013 CFA, it removed the Firm's other options and negated any contractual arrangement for legal services that remained – the parties first and second agreements having been supplanted by the 2013 CFA. Absent another anchoring claim, the Firm's request to recover for *quantum meruit* can be fairly construed *only* as a request to recover for "unjust enrichment," as a primary claim.

This conclusion, though fairly arguable, is well-supported. Despite indications by the Firm, the Court can find no other remedy at law. The parties did not form a viable contract when they signed the 2013 CFA. Without another contract in place, or another theory of relief at issue, the Firms are now limited to

one theory of recovery. The Fifth Circuit seemed to expressly agreed] in remanding this sole, "alternative claim" for consideration.

Moreover, this characterization aligns with results reached by other federal courts in comparable situations involving voided contracts:

> "In *Howell v. Rhoades,* the court held that the "contract was void for lack of consent" because there was no "meeting of the minds" between the plaintiff and the defendant, and as the parties did not consent to the same agreement, no enforceable contract was ever formed. 547 So.2d 1087, 1089 (La.App. 1 Cir.1989). The court found that all the elements of the unjust enrichment cause of action were met only because the contract at issue was entirely void as a result of the parties' lack of consent to the same agreement, and thus "no contract [had] existed ... at all." *Id.* In a similar vein, the court in *Marceaux v. Lake Arthur* found that the plaintiff sufficiently alleged a cause of action for unjust enrichment only because the parties failed to comply with a condition precedent set by Louisiana statute for creating certain expenditure contracts, and this failure prohibited the court's recognition of the contract and any remedies at law derived from it. 392 So.2d 783, 785 (La.App. 3 Cir.1980)."

*Gen. Acc. Ins. Co. of Am. v. Aggreko, LLC*, No. 11-CV-1682, 2012 WL 6738217, at *3 (W.D. La. Dec. 28, 2012).

Therefore, as written, as apparently intended, and as best interpreted now, the Firm's remaining claim is a primary one for unjust enrichment.

### C. The Firms' Remaining Arguments are Without Merit

#### 1. Fox has not conceded "liability" under a *quantum meruit* theory.

The Firms argue that Fox "admits . . . [the Firms] are entitled to be compensated on a quantum meruit basis." ECF No. 265-2, at 8. The Firms offer three references to support that position. Fox disputes it.

13

In support, the Firms initially cite paragraph 47 of Fox's Answer and Counterclaim (ECF No. 10, at 24). This paragraph states: "Finally, in the alternative, and should the Court declare that the 2010 and 2013 Agreements are unenforceable, Fox requests a determination whether any fees and expenses are owed to the Firms under a theory of quantum meruit or otherwise." *Id.* This is neither an admission of any kind, nor an averment specific to the *quantum meruit* claim. It is, rather plainly, a conditional, and alternative, request for a "determination." And it seeks – again, rather plainly – a determination as to "whether" the Firms are entitled to recover. On the same page and elsewhere, Fox qualifies statements about the Firms' entitlement to compensation with the phrase "if any." *See id.*

Second, the Firms refer to paragraph 44 of Fox's First Amended Answer, Affirmative Defenses, and Counterclaim. ECF No. 30, at 25. However, paragraph 44 is a flat denial of paragraph 44 of the Complaint (ECF No. 1, at 9), which states: "But for the Firms' efforts in securing the appointment of the Trustee, Fox likely would not have received anything on account of her equity interest in the Rosbottom bankruptcy estate." *Id.* Here, again as elsewhere, Fox admits that the Firms performed services that inured to her benefit. But that admission cannot be reasonably construed as an admission that the Firms are now entitled to some undetermined recovery via *quantum meruit*.

14

Lastly, the Firms refer to Fox's deposition as containing decisive admissions. The Firms quote a number of partial or brief responses given by Fox to a number of partial or complex questions posed to her. It appears true that – at least as given and reproduced – Fox's responses could be construed as "admissions," from litigant who was also a lay witness, that compensation of some kind was owed to the Firms for some reason.

Even going that far, however, Fox repeatedly qualified her statements and made clear that she did not fully understand the issue. Fox testified at various points that she did not think she owed the Firms "nothing" for services already rendered; she *then* owed them "something"; she had "no idea" what that something may be, and; at the time of the deposition, she believed she owed the Firm "something," whether "dollars or whatever" in deposing counsel's words. ECF No. 265-2. *Aetna Ins. Co. v. Kennedy to Use of Bogash*, 301 U.S. 389, 393, 57 S. Ct. 809 (1937)

The limited issue before the Court is whether this testimony left a binding admission or stipulation in place, such that only calculation remains now, or such that the nature of the claim has been otherwise altered. It does not. The testimony may ultimately be authentic and relevant. It may be admissible and persuasive. It may even constitute a sworn "admission" that undercuts or contradicts Fox's defenses. Or, of course, it may not.

In any scenario, the testimony does not bindingly admit or stipulate to liability under a theory of *quantum meruit*. It arguably falls short of any such admission under any theory of liability. Even threaded together as the Firms suggest it should be, and even acknowledging Fox's clear statements that services were rendered and something was owed, the testimony falls short of that mark. To the contrary, the testimony much more clearly demonstrated Fox's *lack* of understanding of what compensation may be owed or why; what form it may now take; or any articulation of countervailing reasoning. No legal theory was mentioned or explained. Nor was any legal defense or right raised or waived.

Meanwhile, through counsel and in writing, Fox has denied liability under this theory from the outset. Fox continues to do so. And even had Fox not done so, the *nature* of the claim (as explained below) is the controlling factor. Fox said nothing that would change the nature of the Firms' claim. Nor could she have. And nor did the success or failure of the Firms' other claims.

To be clear, this decision does not reach any other issues related to this testimony. The Court finds only that this Motion is unaffected by the testimony.

Again, it bears mentioning that this conclusion comports with the Fifth Circuit's remand order. The opinion never mentions any admission or stipulation made by Fox or her attorneys. Nor does it limit the Court's review to the issue of calculating the Firms' recovery – as it may have, for instance, regarding an "ancillary" dispute over attorney's fees following a "primary" dispute under another

16

theory. Instead, the Fifth Circuit's mandate was clear: to "consider[] . . . the Firms' *alternative quantum meruit claim.*" ECF No. 254, at 11 (emphasis added). The Court thus also cannot reconcile the Firms' suggested interpretation of its claim with the Fifth Circuit's stated mandate.

### 2. The fact that attorney's fees are involved is not dispositive.

Further, the Firm clearly seeks a recovery that would represent attorney's fees, at least in large part. That alone, however, is insufficient to sustain a motion to strike a jury demand.

The parties cite no authority indicating that any dispute involving attorney's fees would either preclude a jury's involvement, or require a Court's exclusive imposition, at this point. The only authorities that would provide even loose support for that proposition are either distinguishable or particular in language. Most cases cited to the Court, and decided in general, involve attorney's fees ancillary to recover for another claim. It may be true that attorney's fees disputes are typically – even almost exclusively – decided in particular ways, and that "customs" and "understandings" would favor the same methods.

However, no rule, custom, or understanding directly precludes a jury trial in this instance. Nor is that outcome likely. Litigants have an important, and sacrosanct, right to a jury trial when available. Only grave considerations or legal preclusions should suffice.

True, no rule or precedent sets forth a common law *right* to recover attorney's fees in every instance. And the Seventh Amendment does not guarantee a trial by jury to determine reasonable attorney's fees. *See Resolution Trust Corp. v. Marshall*, 939 F.2d 274, 279 (5th Cir. 1991) (citing *Empire State Insurance Co. v. Chafetz,* 302 F.2d 828, 830 (5th Cir. 1962)[5]); *see also G.C. Development Corp. v. Zayas,* 2017 WL 1273965, at *2 (S.D. Tex. 2017), *report and recommendation adopted,* 2017 WL 1230814 (S.D. Tex. 2017). But it is certainly permissible. Typically, a jury as trier of fact *may* determine the amount of reasonable attorney's fees, at least deciding other issues as well. *See Resolution Trust Corp.*, 939 F.2d at 279 *(citing Toren v. Braniff, Inc.,* 893 F.2d 763, 767 (5th Cir. 1990), and *Farmland Indus. Inc. v. Andrews Transport Co.,* 888 F.2d 1066, 1067 (5th Cir.1989)); *see also Territa v. Oliver*, 2014 WL 28862, at *3 (E.D. La. 2014); *Shoop v. Devon Energy Production Company, L.P.,* 2011 WL13229355, at *1 (N.D. Tex. 2011).

Here, the Firms seeks to recover for unjust enrichment. That request is no longer tethered to the 2013 CFA or any enforceable contract for legal services. None ever existed. Legal fees may represent the bulk of any recovery. Former legal services contracts may even be a general reference point. But no such contract was ever formed to govern the recovery of any such fees. And so the Firm no longer stands to recover attorney's fee. The Firms' claims must now rest upon findings

---

[5] There was no common law right to attorney's fees. *Empire State Ins. Co. v. Chafetz*, 302 F.2d 828, 830 (*citing Mowat v. Brown*, 19 F. 87 (C.C. Minn. 1884)).

that fall outside the boundaries of voided agreements. And to be clear, the Firm's requested recovery at least implicates more than just attorney's fees.

Fox has the right to a jury trial as to those issues. [6]

### III. Conclusion

Based on the foregoing, IT IS RECOMMENDED that Plaintiffs' Motion to Strike Jury Demand (ECF No. 265) be DENIED.

Under the provisions of 28 U.S.C. § 636(b)(1)(c) and Fed. R. Civ. P. 72(b), parties aggrieved by this Report and Recommendation have fourteen (14) calendar days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. No other briefs (such as supplemental objections, reply briefs, etc.) may be filed. Providing a courtesy copy of the objection to the undersigned is neither required nor encouraged. Timely objections will be considered by the District Judge before a final ruling.

Failure to file written objections to the proposed findings, conclusions, and recommendations contained in this Report and Recommendation within fourteen

---

[6] As a general rule, in Louisiana, attorney's fees are not recoverable in a civil action in the absence of statute or contract. *See Rhodes v. Collier*, 215 La. 754, 41 So.2d 669, 673 (La. 1949); *see also Hernandez v. Harson,* 237 La. 389, 111 So. 2d 320, 327 (La. 1958); *Ogea v. Loffland Brothers Co.,* 622 F.2d 186, 191 (5th Cir. 1980). That issue and its corollaries are not part of the pending motion, however. The parties do not presently dispute that attorney's fees *can* be recovered through an unjust enrichment claim. Again, only the nature of the claim and its effects upon Fox's right to a jury trial are at issue.

(14) days from the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Judge, except upon grounds of plain error.

THUS DONE AND SIGNED in chambers in Alexandria, Louisiana, this __19th__ day of March, 2022.

Joseph H.L. Perez-Montes
United States Magistrate Judge